UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JIMMIE R. GRANT, | No. 2:15-cv-1455-CKD |
| Plaintiff, | |
| v. | ORDER |
| CAROLYN W. COLVIN, Acting Commissioner of Social Security, | |
| Defendant. | |

Plaintiff seeks judicial review of a final decision of the Commissioner of Social Security ("Commissioner") denying an application for Disability Income Benefits ("DIB") under Title II of the Social Security Act ("Act"). For the reasons discussed below, the court will deny plaintiff's motion for summary judgment and grant the Commissioner's cross-motion for summary judgment.

BACKGROUND

Plaintiff, born April 28, 1965, applied on November 3, 2008 for DIB, alleging disability beginning July 14, 2005. Administrative Transcript ("AT") 109, 240-41. Plaintiff alleged he was unable to work due to depression, right foot, neck, and shoulder pain, skin problems, high blood pressure, acid reflux, and sleep disturbance. AT 298. In a decision dated April 4, 2011, the ALJ

determined that plaintiff was not disabled.[1]  AT 110-23.  However, the Appeals Council vacated this decision, and remanded plaintiff's claim to the ALJ for further proceedings.  AT 132-35.  Accordingly, further administrative proceedings were held in this matter and, on May 10, 2013, the ALJ again determined that plaintiff was not disabled.  AT 9-24.  In support of his second non-disability determination, the ALJ made the following findings (citations to 20 C.F.R. omitted):

> 1. The claimant last met the insured status requirements of the Social Security Act on December 31, 2009.
>
> 2. The claimant did not engage in substantial gainful activity during the period from his alleged onset date of July 14, 2005 through his date last insured of December 31, 2009.

---

[1] Disability Insurance Benefits are paid to disabled persons who have contributed to the Social Security program, 42 U.S.C. § 401 et seq.  Supplemental Security Income is paid to disabled persons with low income. 42 U.S.C. § 1382 et seq.  Both provisions define disability, in part, as an "inability to engage in any substantial gainful activity" due to "a medically determinable physical or mental impairment. . . ." 42 U.S.C. §§ 423(d)(1)(a) & 1382c(a)(3)(A). A parallel five-step sequential evaluation governs eligibility for benefits under both programs. See 20 C.F.R. §§ 404.1520, 404.1571-76, 416.920 & 416.971-76; Bowen v. Yuckert, 482 U.S. 137, 140-142, 107 S. Ct. 2287 (1987).  The following summarizes the sequential evaluation:

> Step one:  Is the claimant engaging in substantial gainful activity?  If so, the claimant is found not disabled.  If not, proceed to step two.
>
> Step two:  Does the claimant have a "severe" impairment?  If so, proceed to step three.  If not, then a finding of not disabled is appropriate.
>
> Step three:  Does the claimant's impairment or combination of impairments meet or equal an impairment listed in 20 C.F.R., Pt. 404, Subpt. P, App.1?  If so, the claimant is automatically determined disabled.  If not, proceed to step four.
>
> Step four:  Is the claimant capable of performing his past work?  If so, the claimant is not disabled.  If not, proceed to step five.
>
> Step five:  Does the claimant have the residual functional capacity to perform any other work?  If so, the claimant is not disabled.  If not, the claimant is disabled.

Lester v. Chater, 81 F.3d 821, 828 n.5 (9th Cir. 1995).

The claimant bears the burden of proof in the first four steps of the sequential evaluation process. Bowen, 482 U.S. at 146 n.5, 107 S. Ct. at 2294 n.5.  The Commissioner bears the burden if the sequential evaluation process proceeds to step five.  Id.

3. Through the date last insured, the claimant had the following severe impairments: chronic cervical strain with discogenic disease, including the shoulder, forearm, and secondary arm pain due to chronic cervical strain with discogenic disease secondary to an industrial accident in July 2005; chronic focal degenerative disc disease at C6-7; and status post left anterior cervical diskectomy [*sic*] and fusion.

4. Through the date last insured, the claimant did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1.

5. After careful consideration of the entire record, the undersigned finds that, through the date last insured, the claimant had the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b), with the ability to lift 20 pounds occasionally and 10 pound frequently; to stand and/or walk for 6 hours in an 8-hour workday; and to sit for 6 hours in an 8-hour workday. The claimant is never able to climb ladders, ropes, or scaffolds, but he is able to climb ramps and stairs frequently. The claimant is also able to balance, stoop, kneel, crouch and crawl frequently. In addition, he is able to reach overhead occasionally with both upper extremities with occasional neck posturing; that is, with turning his head up, down, and sideways.

6. Through the date last insured, the claimant was unable to perform any past relevant work.

7. The claimant was born on April 28, 1965, and was 44 years old, which is defined as a younger individual age 18-49, on the date last insured.

8. The claimant has a limited education and is able to communicate in English.

9. Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferrable job skills.

10. Through the date last insured, considering the claimant's age, education, work experience, and residual functional capacity, there were jobs that existed in significant numbers in the national economy that the claimant could have performed.

11. The claimant was not under a disability, as defined in the Social Security Act, at any time from July 14, 2005, the alleged onset date, through December 31, 2009, the date last insured.

AT 14-23

/////

/////

3

ISSUES PRESENTED

Plaintiff's sole argument is that the ALJ committed prejudicial error because he improperly found plaintiff's testimony regarding the extent of his pain and symptoms to be less than fully credible.

LEGAL STANDARDS

The court reviews the Commissioner's decision to determine whether (1) it is based on proper legal standards pursuant to 42 U.S.C. § 405(g), and (2) substantial evidence in the record as a whole supports it. Tackett v. Apfel, 180 F.3d 1094, 1097 (9th Cir. 1999). Substantial evidence is more than a mere scintilla, but less than a preponderance. Connett v. Barnhart, 340 F.3d 871, 873 (9th Cir. 2003) (citation omitted). It means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Orn v. Astrue, 495 F.3d 625, 630 (9th Cir. 2007), quoting Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005). "The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving ambiguities." Edlund v. Massanari, 253 F.3d 1152, 1156 (9th Cir. 2001) (citations omitted). "The court will uphold the ALJ's conclusion when the evidence is susceptible to more than one rational interpretation." Tommasetti v. Astrue, 533 F.3d 1035, 1038 (9th Cir. 2008).

The record as a whole must be considered, Howard v. Heckler, 782 F.2d 1484, 1487 (9th Cir. 1986), and both the evidence that supports and the evidence that detracts from the ALJ's conclusion weighed. See Jones v. Heckler, 760 F.2d 993, 995 (9th Cir. 1985). The court may not affirm the ALJ's decision simply by isolating a specific quantum of supporting evidence. Id.; see also Hammock v. Bowen, 879 F.2d 498, 501 (9th Cir. 1989). If substantial evidence supports the administrative findings, or if there is conflicting evidence supporting a finding of either disability or nondisability, the finding of the ALJ is conclusive, see Sprague v. Bowen, 812 F.2d 1226, 1229-30 (9th Cir. 1987), and may be set aside only if an improper legal standard was applied in weighing the evidence. See Burkhart v. Bowen, 856 F.2d 1335, 1338 (9th Cir. 1988).

/////
/////
/////

ANALYSIS

  A. *The ALJ Provided Multiple Clear and Convincing Arguments for Discounting Plaintiff's Testimony Regarding the Extent of his Pain and Symptoms*

  Plaintiff argues that the ALJ erred by determining that plaintiff's testimony regarding the intensity, persistence, and limiting effects of his pain and symptoms was not fully credible.

  The ALJ determines whether a disability applicant is credible, and the court defers to the ALJ's discretion if the ALJ used the proper process and provided proper reasons. See, e.g., Saelee v. Chater, 94 F.3d 520, 522 (9th Cir. 1995). If credibility is critical, the ALJ must make an explicit credibility finding. Albalos v. Sullivan, 907 F.2d 871, 873-74 (9th Cir. 1990); Rashad v. Sullivan, 903 F.2d 1229, 1231 (9th Cir. 1990) (requiring explicit credibility finding to be supported by "a specific, cogent reason for the disbelief").

  In evaluating whether subjective complaints are credible, the ALJ should first consider objective medical evidence and then consider other factors. Bunnell v. Sullivan, 947 F.2d 341, 344 (9th Cir. 1991) (en banc). If there is objective medical evidence of an impairment, the ALJ then may consider the nature of the symptoms alleged, including aggravating factors, medication, treatment and functional restrictions. See id. at 345-47. The ALJ also may consider: (1) the applicant's reputation for truthfulness, prior inconsistent statements or other inconsistent testimony, (2) unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment, and (3) the applicant's daily activities. Smolen v. Chater, 80 F.3d 1273, 1284 (9th Cir. 1996); see generally SSR 96-7p; SSR 95-5p; SSR 88-13. Work records, physician and third party testimony about nature, severity and effect of symptoms, and inconsistencies between testimony and conduct also may be relevant. Light v. Social Security Administration, 119 F.3d 789, 792 (9th Cir. 1997). A failure to seek treatment for an allegedly debilitating medical problem may be a valid consideration by the ALJ in determining whether the alleged associated pain is not a significant non-exertional impairment. See Flaten v. Secretary of HHS, 44 F.3d 1453, 1464 (9th Cir. 1995). The ALJ may rely, in part, on his or her own observations, see Quang Van Han v. Bowen, 882 F.2d 1453, 1458 (9th Cir. 1989), which cannot substitute for medical diagnosis. Marcia v. Sullivan, 900 F.2d 172, 177 n.6 (9th Cir. 1990).

"Without affirmative evidence showing that the claimant is malingering, the Commissioner's reasons for rejecting the claimant's testimony must be clear and convincing." Morgan v. Commissioner of Social Sec. Admin., 169 F.3d 595, 599 (9th Cir. 1999).

Here, the ALJ found plaintiff's testimony to be less than fully credible because plaintiff received only conservative medical treatment, there existed gaps in plaintiff's treatment during the relevant period, plaintiff engaged in daily living activities indicating greater functional capabilities, and the objective medical evidence as a whole conflicted with plaintiff's claims of debilitating pain and symptoms. AT 20-21. As discussed in more detail below, these reasons constituted clear and convincing reasons for the ALJ to find plaintiff's testimony less than fully credible and were supported by substantial evidence in the record.

First, the ALJ determined that plaintiff received only conservative treatment for his impairments throughout the relevant period. This was a proper consideration regarding the credibility of plaintiff's pain and symptom testimony. See Tommasetti v. Astrue, 533 F.3d 1035, 1039-40 (9th Cir. 2008) (reasoning that a favorable response to conservative treatment undermines complaints of disabling symptoms); Parra v. Astrue, 481 F.3d 742, 751 (9th Cir. 2007) ("We have previously indicated that evidence of conservative treatment is sufficient to discount a claimant's testimony regarding severity of an impairment"); Fair v. Bowen, 885 F.2d 597, 604 (9th Cir. 1989). Furthermore, it was supported by substantial evidence in the record. Throughout the course of the relevant period, plaintiff stated that he used only over the counter pain medication and medical marijuana and received only chiropractic care and physical therapy to treat his impairments.[2] E.g., AT 439, 467, 497, 521-22, 531-32, 541, 691, 697, 737, 798, 801. Furthermore, during the course of the relevant period, plaintiff's treating physicians generally did

---

[2] While plaintiff did undergo a cervical fusion surgical procedure in June of 2010, that treatment occurred roughly six months after the relevant period, which ended on December 31, 2009. AT 14, 860. The fact that plaintiff underwent such a procedure or more generally experienced a deterioration of his physical condition after the relevant period does not undermine the ALJ's determination that plaintiff received only conservative treatment for his impairments during the relevant period. See Weetman v. Sullivan, 877 F.2d 20, 22 (9th Cir. 1989) (noting that deterioration in a claimant's condition subsequent to the period of eligibility is largely "irrelevant" to determining whether a claimant was disabled during the relevant period).

not recommend that plaintiff receive treatment more involved than what he already received. While some of plaintiff's physicians indicated that epidural injections might be proper in the event plaintiff continued to experience flare ups in his condition, plaintiff specifically stated his desire to avoid surgery or treatment involving injections. AT 507, 521-22, 691, 697. In short, as the ALJ noted in his decision, plaintiff did "not generally receive[ ] the type of medical treatment one would expect for a totally disabled individual." AT 20.

The ALJ also properly considered the fact that there existed large gaps in plaintiff's treatment over the course of the relevant period. Failure to seek consistent treatment is a proper consideration when evaluating credibility. See Burch v. Barnhart, 400 F.3d 676, 681 (9th Cir. 2005). "We have long held that, in assessing a claimant's credibility, the ALJ may properly rely on unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment . . . Moreover, a claimant's failure to assert a good reason for not seeking treatment, or a finding by the ALJ that the proffered reason is not believable, can cast doubt on the sincerity of the claimant's pain testimony." Molina, 674 F.3d at 1113-14 (citation and quotation marks omitted).

Plaintiff argues that it was improper for the ALJ to consider any gaps in plaintiff's treatment because the ALJ sought no explanation from plaintiff for these gaps. However, nothing in the record indicates that these gaps were attributable to plaintiff's lack of insurance, inability to pay for needed treatment, or any other circumstance that would preclude the ALJ from considering them in support of his adverse credibility determination. See Orn, 495 F.3d at 638. Moreover, even had the ALJ been obligated to determine what led to any gaps in plaintiff's treatment before he could rely on them for purposes of making a credibility determination, any error in not doing so would have been harmless in light of the other clear and convincing reasons the ALJ provided that are discussed both above and below. See Molina, 674 F.3d at 1115 (harmless error when ALJ provided one or more invalid reasons for disbelieving a claimant's testimony, but also provided valid reasons that were supported by the record).

Third, the ALJ also properly determined that plaintiff's reported daily activities undermined his claims of disabling pain and symptoms. "While a claimant need not vegetate in a

1  dark room in order to be eligible for benefits, the ALJ may discredit a claimant's testimony when
2  the claimant reports participation in everyday activities indicating capacities that are transferable
3  to a work setting . . . Even where those activities suggest some difficulty functioning, they may be
4  grounds for discrediting the claimant's testimony to the extent that they contradict claims of a
5  totally debilitating impairment." Molina, 674 F.3d at 1112-13 (citations and quotation marks
6  omitted); see also Burch v. Barnhart, 400 F.3d 676, 680 (9th Cir. 2005) (ALJ properly considered
7  claimant's ability to care for her own needs, cook, clean, shop, interact with her nephew and
8  boyfriend, and manage her finances and those of her nephew in the credibility analysis); Morgan
9  v. Comm'r of Soc. Sec., 169 F.3d 595, 600 (9th Cir. 1999) (ALJ's determination regarding
10 claimant's ability to "fix meals, do laundry, work in the yard, and occasionally care for his
11 friend's child" was a specific finding sufficient to discredit the claimant's credibility).

12         Here, both plaintiff and his domestic partner provided statements in August of 2009
13 representing that plaintiff's daily activities consisted of feeding and watering goats, caring for a
14 cat, birds, and dogs, performing outdoor chores such as cleaning, mowing, and watering his yard,
15 and preparing light meals. AT 309-313, 320-24. They also stated that plaintiff went to a Sunday
16 flea market and attended car shows from time to time. AT 312, 320. In addition, plaintiff
17 testified at the March 14, 2013 hearing that he was able to cook daily meals for him and his wife,
18 mow his lawn, chop wood, assist with gardening, perform maintenance on the more than one
19 dozen vehicles he owned, and attend flea markets and car shows. AT 48-55.

20         To be sure, the record also contains some contrary evidence, such as portions of plaintiff's
21 testimony indicating that he received assistance from others in performing some of the above-
22 mentioned activities, suggesting that plaintiff was somewhat more limited than what his stated
23 activities would suggest. AT 50-53. However, it is the function of the ALJ to resolve any
24 ambiguities, and the court finds the ALJ's assessment to be reasonable and supported by
25 substantial evidence. See Rollins v. Massanari, 261 F.3d 853, 857 (9th Cir. 2001) (affirming
26 ALJ's credibility determination even where the claimant's testimony was somewhat equivocal
27 about how regularly she was able to keep up with all of the activities and noting that the ALJ's
28 interpretation "may not be the only reasonable one").

Finally, the ALJ also relied on the fact that plaintiff's pain and symptom testimony contradicted the objective medical findings in the record. "[A]fter a claimant produces objective medical evidence of an underlying impairment, an ALJ may not reject a claimant's subjective complaints based solely on a lack of medical evidence to fully corroborate the alleged severity of pain." Burch v. Barnhart, 400 F.3d 676, 680 (9th Cir. 2005) (citing Bunnell v. Sullivan, 947 F.2d 341, 345 (9th Cir. 1991)). However, while a lack of medical evidence cannot form the sole basis for discounting plaintiff's subjective symptom testimony, it is nevertheless a relevant factor for the ALJ to consider. Burch, 400 F.3d at 681.

Here, there existed ample objective medical evidence in the record supporting the ALJ's adverse credibility determination. For instance, Dr. Xeller noted during his March 26, 2007 physical examination of plaintiff that while plaintiff exhibited some neck pain due to a significant protrusion at the level of the C6-C7 vertebrae, he had full range of motion in his neck and upper extremities and his neck impairment had "improved with conservative treatment." AT 508, 510. Dr. Xeller also noted that plaintiff had had a shoulder problem, but that it had been "resolved" by the time of his examination. AT 510. Similarly, Dr. Kumar, another examining physician, found that plaintiff had a normal range of motion in his neck and upper extremities and exhibited no evidence of muscle atrophy. AT 440-42. He also noted that plaintiff had a non-antalgic gait, a negative straight leg raise test, and was able to walk on his heels and toes. Id. A third physician, Dr. Fernandez, also noted similar objective findings after giving plaintiff a physical examination in May of 2008. AT 467-68.

In addition to the objective examination findings, a number of physicians who either examined plaintiff or reviewed plaintiff's medical records issued opinions that plaintiff retained a degree of functional capacity that rendered him not disabled within the meaning of the Act. See AT 443, 446-52, 456-57, 595-98 664-73, 686-87, 749, 863-64. Plaintiff does not contest the ALJ's determination to accord these opinions probative weight in support of determining that plaintiff had a residual functional capacity that precluded disability. AT 17-19, 22. Nor does he contest the ALJ's determination that the other medical opinions in the record that opined limitations more in line with plaintiff's own subjective complaints were entitled to reduced

weight. AT 17-19. In short, there was substantial evidence in the record to support the ALJ's reasoning that plaintiff's testimony conflicted with the objective medical evidence in the record.

In sum, the ALJ provided multiple clear and convincing reasons to discount plaintiff's pain and symptom testimony that were supported by substantial evidence in the record. Accordingly, the ALJ did not err in making his adverse credibility determination.

CONCLUSION

For the reasons stated herein, IT IS HEREBY ORDERED that:

1. Plaintiff's motion for summary judgment (ECF No. 13) is denied;

2. The Commissioner's cross-motion for summary judgment (ECF No. 16) is granted; and

3. Judgment is entered for the Commissioner.

Dated: April 28, 2016

_____
CAROLYN K. DELANEY
UNITED STATES MAGISTRATE JUDGE

11 grant1455.ss